# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division



AGNES JONES, et al.,                    :          CIVIL ACTION

      Plaintiff,                   :

          v.                     :

ALLIEDSIGNAL, INC.,                     :
now known as HONEYWELL
INTERNATIONAL INC. and                  :
formerly known as ALLIED
CHEMICAL CORPORATION,                   :          NO. CV205-221
                                                   AND ALL MEMBER
      Defendant.                   :          CASES

## O R D E R

Plaintiffs, Agnes Jones, Christine Watson Jones, Katharine
Watson Sanders, Preston F. Sanders, Donald R. Bartlett, Carl
M. Rooks, Kathryn K. Friedman, William E. Dunn, Shirley Joyner
Dunn, and Thomas O. Woodcock, moved to intervene in a state
court action filed by Frank and Judy Owens against Defendant,
AlliedSignal, Inc. ("Allied"). The Owenses brought state law
tort claims against Allied for the release of hazardous
chemicals from Defendant's manufacturing plant onto Plaintiffs'

AO 72A
(Rev. 8/82)

land.  Allied removed the intervenors' actions to federal court.

Presently before the Court is Plaintiffs' motion to remand their actions to the Superior Court of Glynn County.  Because jurisdiction is proper in federal court, the motion will be **DENIED**.

**BACKGROUND**

From 1956 through 1979, Allied owned and operated a chlor-alkali plant on land abutting Purvis Creek, a tributary of the Turtle River in Glynn County, Georgia.  In December 1979, Allied sold the facility to Linden Chemicals and Plastics Corp. ("LCP").

According to Plaintiffs' complaint, Allied financed LCP's purchase of the plant, and conspired with LCP to deceive the government about Allied's environmental pollution at the site. Plaintiffs aver that Allied paid LCP in secret to accept responsibility for Allied's misdeeds.  According to Plaintiffs, Allied used its status as a creditor of LCP to stave off its own day of reckoning for environmental contaminants that Allied had released into the estuary during its operation of the plant.

AO 72A
(Rev. 8/82)

Nonetheless, in the early 1990s, LCP experienced financial difficulties, and the state government became apprised of pollution problems at the site.

> After the LCP plant was shut down in 1994, GAEPD [the Georgia Environmental Protection Division] requested that EPA [the United States Environmental Protection Agency] take immediate action to (1) address the chemicals remaining on site from the former operations at the facility and (2) stop the ongoing release of these contaminants into the adjacent tidal marshes. . . . [I]n 1995, GAEPD designated LCP as its highest priority site in the state, clearing the way for the LCP site to be placed on EPA's NPL [National Priorities List or "Superfund" site list] in June 1996.

EPA, <u>Work Continues at Four Brunswick, Georgia, Sites</u> (June 2004), CV205-172, Dkt. No. 54, Ex. J at 8.

Thereafter, high-ranking LCP executives were tried and convicted of federal environmental crimes in this Court.

> The LCP Chemicals Superfund Site consists of 550 acres, the majority of which is a tidal marsh.  An oil refinery, a paint manufacturing company, a power plant, and a chlor-alkali plant have all operated at this site over the last 70 years.  Mercury, polychlorinated biphenyls (PCBs), and semi-volatile contamination are prevalent across the plant site soils, in groundwater, and in the biota in the marsh. Since 1919 this site has been occupied by at least five major companies:  Atlantic Refining Company (ARCO); Georgia Power Company; Dixie Paints and Varnish Company (currently, the O'Brien Company); Allied Chemical Inc. (currently, Allied Signal); and, the Hanlin Group subsidiary, LCP Chemicals-Georgia, Inc..

3

> The contamination of greatest concern at this Site is a large dispersion of mercury and polychlorinated biphenyls throughout the marshlands that was the result of the chemical manufacturing process undertaken by Allied Signal [] between 1955 and 1979; EPA estimates that more than 380,000 pounds of mercury were "lost" in the area during this period. In addition to mercury and polychlorinated biphenyls, lead, other metals, and volatile organic compounds have contaminated the 500-acre marshlands area, a 1-mile portion of the Turtle River and the entirety of Purvis Creek.  Mercury and polychlorinated biphenyls have been detected in aquatic life at levels sufficient to produce a ban on commercial fishing in these areas and a seafood consumption advisory for part of the river and all of the creek.

EPA, Georgia NPL/NPL Caliber Cleanup Site Summaries, _available at_  http://www.epa.gov/region4/waste/npl/nplga/lcpincga.htm (last visited on Apr. 27, 2006).

Plaintiffs are a group of ten area residents who own land near the Superfund site, along the Turtle River estuary. Specifically, Plaintiffs' land abuts Purvis Creek  or the adjoining tidewater marshland in that vicinity.

In 1995, the Owenses filed a class action complaint against Allied, in Glynn County State Court, alleging trespass to land, nuisance, and negligence, resulting from the release of mercury and PCBs from Allied's manufacturing facility onto Plaintiffs' land and in the adjoining estuary.  In 1996, State Court Judge Orion L. Douglass agreed to certify the case for

4

class treatment, but only relating to liability under Plaintiffs' public nuisance claim.

In 1997, Plaintiffs sought injunctive relief, necessitating a transfer of the action to Superior Court. Thereafter, Superior Court Judge Amanda F. Williams endorsed Judge Douglass' decision regarding class certification, and permitted consideration of the propriety of injunctive relief on a class-wide basis, but denied the parties' repeated efforts to otherwise broaden or narrow the scope of the class action.

On the eve of the parties' scheduled trial date in August 2005, Plaintiffs came to understand that Judge Williams' phasing of the trial was not to their satisfaction. Particularly, as Plaintiffs have described it, they were opposed to first trying the overall question of liability to one jury, and if successful, facing an appeal, and second, determining the scope of equitable relief before the trial court judge, facing another appeal, and finally trying damages to a different jury or juries.

Plaintiffs asserted that such a procedure was unlawful, impractical, and prejudicial to their interests. As a result, Plaintiffs' requested, and Judge Williams agreed, to decertify the action. Thereafter, Plaintiffs in the above-captioned case

AO 72A
(Rev. 8/82)

(all former class members), sought to intervene in the Owenses'
action.   Allied removed the intervenors' claims to federal
court within thirty days of receiving Plaintiffs' motion to
intervene.

Twenty-five other landowners or former landowners are
plaintiffs in other actions involving similar contamination
claims, which are before the Court as well.   Unlike the cases
before the Court sub judice (the Jones actions), those actions
(the Ricks actions) were filed by the plaintiffs in this Court
after their attorneys decertified the class in Superior Court.
Moreover, twenty-five other plaintiffs have filed sixteen
related, new complaints against Allied in Glynn County Superior
Court in the last few months.   Since March 2006, Allied has
removed those cases to this Court.   There are other, parallel
claims against Allied, including an action filed by Glynn
County, which remain pending in the state court system.[1]

---

[1]
    Unlike a state, a county government is considered to be a "citizen"
for the purposes of diversity jurisdiction in most instances.   Moor v.
County of Alameda, 411 U.S. 693, 719-21 (1973); see also Busbee v. Cont'l
Ins. Co., 526 F. Supp. 1243, 1246 (N.D. Ga. 1981); Mercer County v.
Cowles, 74 U.S. 118, 122 (1869); Vierling v. Celebrity Cruises, Inc., 339
F.3d 1309, 1314-15 n.15 (11th Cir. 2003); Parks v. Carriere Consol. Sch.
Dist., 12 F.2d 37, 38 (5th Cir. 1926).

AO 72A
(Rev. 8/82)

## DISCUSSION

The removal statute provides, in pertinent part, that:

> If the case stated by the initial pleading is not
> removable, a notice of removal may be filed within
> thirty days after receipt by the defendant, through
> service or otherwise, of a copy of an amended
> pleading, motion, order or other paper from which it
> may first be ascertained that the case is one which
> is or has become removable, except that a case may
> not be removed on the basis of jurisdiction conferred
> by section 1332 of this title more than 1 year after
> commencement of the action.

28 U.S.C.A. § 1446(b) (1994).

"A removing defendant has the burden of proving the existence of federal jurisdiction." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th Cir. 1996), overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

Plaintiffs assert several grounds in support of their motion to remand. Firstly, Plaintiffs contend that removal is too late because more than a year has passed since the Owenses' original action commenced. Secondly, Plaintiffs posit that Defendant's removal is tardy because it has been more than thirty days since diversity became complete in this action.[2] Thirdly, Plaintiffs maintain that removal is premature because

---

[2] In 1996, the Owenses voluntarily dismissed the only non-diverse Defendant in the case, Georgia Power Company.

AO 72A
(Rev. 8/82)

the intervenors' motion had not been granted at the time removal occurred.[3]

Fourthly, Plaintiffs argue that removal is improper under the Federal Rules of Civil Procedure because Defendant did not remove the entire action. Fifthly, Plaintiffs suggest that, if removal from a motion to intervene is permissible, removal is untimely because a motion to intervene by certain Plaintiffs was first filed in Superior Court in 2000, which is much more than thirty days ago.[4]

---

[3]
    As a matter of straightforward statutory interpretation, the Court can dispense with Plaintiffs' third argument. The law does not require a motion to be granted before an action becomes removable. Rather, the statute provides that a defendant's thirty day window for removal begins to run on the day of receipt of a motion implicating a right to a federal forum. Baker v. Nat'l Boulevard Bank of Chicago, 399 F. Supp. 1021, 1022-23 (N.D. Ill. 1975); Irving Trust Co. v. Century Exp. & Imp., S.A., 464 F. Supp. 1232, 1239 (S.D.N.Y. 1979); but see Engle v. R.J. Reynolds Tobacco Co., 122 F. Supp. 2d 1355, 1361-64 (S.D. Fla. 2000)(holding that a motion to intervene by a non-party is not a "motion" within the plain meaning of the statute).

[4]
    The Court can also reject this final argument posed by Plaintiffs with little discussion. In 2000, certain class members "moved to intervene" in the class action. Four of those class members are Plaintiffs bringing the instant motion. Yet, all of those proposed intervenors were already before the Superior Court at the time, as class members. Allied has stated that Plaintiffs' attempted intervention in 2000 was an effort to certify certain state law claims that had been denied class-wide treatment previously. Such a tactical gambit to circumvent the class certification process would not constitute a removable event.

AO 72A
(Rev. 8/82)

**I.   Removal of the Intervenors' Claims Was Not Untimely Because the Original Action Was Filed Over Ten Years Ago**

Frank and Judy Owens commenced their class action complaint in 1995, and the Jones Plaintiffs moved to intervene in that decertified action in 2005. While it is true that the original action was filed many years ago, Allied removed the claims of the intervening Plaintiffs only, not those of the original claimants, the Owenses. Each assertion of a claim by an intervening Plaintiff is a separate "commencement of an action" as to that plaintiff.   Consequently, removal is not barred by the one year time limit prescribed by § 1446(b).

Generally speaking, the federal district courts that have considered the issue have accepted that, in removal cases, state law governs when an action "commences." E.g., U.S. Airways, Inc. v. PMA Capital Ins. Co., 340 F. Supp. 2d 699, 704 n.4 (E.D. Va. 2004)(collecting cases).   Under Georgia law, a pending motion to intervene is sufficient to commence an action.   See Worthen v. Jones, 240 Ga. 388, 388-89 (1977)(wherein a non-party had filed a pending motion to intervene as a defendant, accompanied by counterclaim); contra id. at 390 (Hall, J., dissenting)(expressing the view that a potential intervenor does not become a party until the court so orders).

AO 72A
(Rev. 8/82)

Federal court decisions from around the country support this approach. In <u>Hill v. Ascent Assurance, Inc.</u>, a medical patient brought a lawsuit against his insurance company regarding a coverage dispute. 205 F. Supp. 2d 606, 608 (N.D. Miss. 2002). On November 3, 1999, Jerry Brown, a Mississippi resident, filed his initial complaint in Mississippi state court against Freedom Life Insurance Company, a Mississippi corporation. On September 29, 2000, Freedom Life dissolved its corporate existence in Mississippi, and reincorporated in Texas. <u>Id</u>.

On May 22, 2001, Brown amended his complaint to add Freedom Life's corporate parent, Assent Assurance, Inc. ("Assent"), other Assent subsidiaries, and an Assent corporate official (all Texas domiciliaries). <u>Id</u>. On December 17, 2001, after the defendants' initial attempt at removal failed, Brown filed a second amended complaint in state court adding two plaintiffs, Mary Hill and Deborah Driskill, who each asserted similar claims against the defendants. <u>Id</u>. at 608-09.

On December 31, 2001, the defendants again sought to remove the entire case to federal court. <u>Id</u>. at 609. The federal court again declined jurisdiction over Brown's claim, finding that because Brown and Freedom Life were not of diverse

10

citizenship when Brown's initial complaint was filed, remand of Brown's claim was necessary. Id. at 611. Yet, regarding the newly added plaintiffs, the court determined that their causes of action commenced with the filing of the second amended complaint. Id. at 613-15. The court noted that Hill and Driskill were not involved in the suit during its first eighteen months, so they had not made substantial progress in state court. Id. at 615.

Greene v. Mobil Oil Corp., a Texas district court decision, applied a similar rationale. On October 10, 1997, Brenda and George Greene, representatives of the estate of Florence Greene, brought a wrongful death action in state court against Mobil Oil Corporation, Mobil corporate affiliates, and non-related entities. 66 F. Supp. 2d 822, 822 (E.D. Tex. 1999). The Greenes alleged that the defendants were liable in negligence for the release of toxic chemicals into the environment. Id. at 822. On February 17, 1999, Plaintiffs amended their complaint to add more than 1,200 plaintiffs, and sought class action status. Id. On March 30, 1999, the state court dismissed the last non-diverse defendant from the action, and the remaining defendants sought to remove the action within thirty days of that order. Id. at 823.

AO 72A
(Rev. 8/82)

The federal court severed and remanded the Greenes' claims, and retained jurisdiction over the 1,200 new plaintiffs' claims. <u>Id</u>. at 823-25. The court noted that the defendants' removal as to the Greenes was untimely, as it was filed more than a year after their initial complaint. <u>Id</u>. at 823. However, the court found that the policy purposes behind § 1446(b) would not be impeded by the retention of the new plaintiffs' claims, because "the additional plaintiffs have in effect instituted a new action," and had not made substantial progress in state court. <u>Id</u>. at 824.[5]

Other courts have reached similar conclusions, or have recognized the soundness of this approach. "[F]or a party added in a suit by a later amended complaint, commencement of the action as among the new party and the original parties may come at the time the complaint is amended." <u>Barnett v. Sylacauga Autoplex</u>, 973 F. Supp. 1358, 1363 (N.D. Ala. 1997)(interpreting Alabama law); <u>Sledz v. Flintoke Co.</u>, 209 F. Supp. 2d 559, 562-63 (D. Md. 2002)(finding that the addition of new <u>defendants</u> does not create the opportunity for removal, distinguishing <u>Hill</u> on that basis).

---

[5]     As in the instant case, "the state court lacked even an opportunity to determine whether these plaintiffs were proper parties to the suit before defendants filed their notice of removal." <u>Id</u>. at 825.

The cases relied on by Plaintiffs for the contrary result are distinguishable and, at bottom, are contrary to Georgia law. That is, while there is some authority to support the notion that an action commences only once, when the original complaint is filed, Worthen rejects that view. 240 Ga. at 388-89.

Plaintiffs cite Ardoin v. Stine Lumber Co., 298 F. Supp. 2d 422 (W.D. La. 2003), in support of their position. In Ardoin, the plaintiffs filed a putative class action in state court. More than a year later, new plaintiffs were added to the case, and the plaintiffs began dismissing non-diverse defendants from the action. Id. at 424, 426-27. The defendants then removed the entire action to federal court. Id. at 424.

Ardoin rejected the idea that an action "commences," for purposes of § 1446(b), whenever a new plaintiff is added to the suit. Id. at 425. For the court, the relevant inquiry was the length of time the case has been pending, not the length of time that a plaintiff has been added to the case. Id. The court found that severing the parties would not be in the interests of judicial economy, and remanded the entire case. Id. at 425 n.1. Even if Ardoin's analysis regarding the

AO 72A
(Rev. 8/82)

"commencement" of an action was found persuasive, the Court must follow Georgia law where it is controlling and to the contrary.

Additionally, <u>Ardoin</u> can be distinguished on the ground that judicial economy considerations do not counsel in favor of remanding the <u>Jones</u> actions. There are fifty other plaintiffs who are parties to thirty-three different lawsuits, which are pending in this Court and raise the same general claims against Allied, other than those claims asserted by the Jones Plaintiffs. To the extent that common discovery, or common trial of certain matters, will be possible in these cases, judicial economy is best served by the Court retaining jurisdiction over these actions.[6]

It is also significant that the parties have been unable or unwilling to manage, analyze, and conclude these claims in litigation in the state court system over the course of the last eleven years. The Court envisions the parties making better progress in resolving the heretofore intractable issues relating to the propriety of Plaintiffs' claims through summary

---

[6]

The other case cited by Plaintiffs, <u>U.S. Airways, Inc. v. PMA Capital Ins. Co.</u>, is also distinguishable. There, the court determined that removal was improper after a two-day bench trial on liability had been conducted in the state court, and the state court had entered findings of fact and conclusions of law in the plaintiffs' favor. 340 F. Supp. 2d at 701-02.

judgment or trial in this Court.[7]   The very real prejudice
suffered by the individual landowners by virtue of the
interminable delays in this case is an important consideration
in determining whether judicial economy or policy concerns
mandate the remand of this action.[8]

In sum, the actions are not due to be remanded because
they were filed beyond the time limit provided by law.


## II. Allied Was Not Obliged to Remove the "Entire Action" Under Federal Law

Plaintiffs contend that the proposed addition of new named
Plaintiffs to an existing case does not render their claims

---

[7]

A series of significant disagreements have been previewed by the
parties that remain unresolved in this litigation, including (1) the
location of the appropriate boundary line of Plaintiffs' parcels with
respect to the marsh boundary (and whether the State of Georgia is a
necessary and indispensable party to resolve that question), (2) whether
Plaintiffs' tort actions are barred if pollution on their properties falls
below a certain state regulatory "safe" level, and (3) whether diminution
in property value is a "special injury" under Georgia law such that
Plaintiffs can recover based on a public nuisance theory of liability.
According to Allied, it intends to present motions for summary judgment on
each of these issues.   The Court's rulings may limit Plaintiffs' claims
significantly or, at the very least, will focus and guide any
trial in the matter.

[8]

Moreover, the fact that Georgia Power was dismissed from the suit in
1996 is irrelevant.   The case is removable based on the motions to
intervene filed by the non-parties in 2005. The Court also notes Allied's
suggestion that the timing of this dismissal indicates that it may have
been a strategic ploy by Plaintiffs in an attempt to defeat Defendant's
significant statutory right to a federal forum.   "The untimeliness of a
removal is a procedural, instead of a jurisdictional, defect."   In re
Uniroyal Goodrich Tire Co., 104 F.3d 322, 324 (11th Cir. 1997).

removable.   Allied rejoins that Plaintiffs should not be permitted to join new cases to a pending state court action so as to defeat a non-resident defendant's opportunity to remove a case to federal court, citing <u>Sheppard v. Wire Rope Corp.</u>, 777 F. Supp. 1285, 1288-89 (E.D. Va. 1991)(characterizing such conduct by plaintiffs' counsel as gimmick and artful maneuvering in an unsuccessful attempt to deprive a defendant from its right of removal).

The Court finds that removal of the entire case is not an absolute requirement under federal law.   A defendant may remove the claims of intervening plaintiffs, while the original plaintiffs remain in state court.   <u>E.g.</u>, <u>Greene</u>, 66 F. Supp. 2d at 824-25.   Although it would serve judicial economy if like claims are litigated in one action, it is not an inexorable command.   A court that has jurisdiction over an action has a "virtually unflagging obligation" to exercise its power to hear and decide the case.   <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976).

In the present procedural posture, based in part on the parties' own litigation decisions, it is not feasible to litigate all related claims in one action, or even one court system, federal or state.   The Court is mindful of judicial

AO 72A
(Rev. 8/82)

economy but, as outlined above, it finds that efficiency considerations weigh in favor of the Jones actions remaining in federal court.

**CONCLUSION**

For the reasons explained above, Plaintiffs' motion to remand is **DENIED**.   Dkt. No. 6.   Plaintiffs' motion for a hearing is **DENIED**.   Dkt. No. 8.

**SO ORDERED**, this _____26th_____ day of May, 2006.


_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)